**U. T. INCORPORATED, a Georgia Corporation, d/b/a Cameras Eye Bookstore, Plaintiff,**

v.

**Joseph BROWN, District Attorney for the Twenty-Seventh Judicial District, and Individually, C. C. Elmore, Chief of Police of the City of Gastonia, and Individually, and Gary Hicks, City Manager for the City of Gastonia, and Individually, and Henry Whiteside, City Attorney for the City of Gastonia, and Individually, Defendants.**

No. C–C–77–282.

United States District Court,
W. D. North Carolina,
Charlotte Division.

Aug. 3, 1978.

Michael K. Curtis and Charles A. Lloyd, Smith, Patterson, Follin, Curtis & James, Greensboro, N. C., Michael K. Hodnett, Gastonia, N. C., for plaintiff.

Joseph G. Brown, and Graham C. Mullen, Mullen, Holland & Harrell, Gastonia, N. C., for defendants.

## MEMORANDUM OF DECISION

McMILLAN, District Judge.

This case was brought under 42 U.S.C. § 1983 to challenge the constitutionality of a local ordinance [see appendix] adopted by the City of Gastonia, North Carolina, on August 16, 1977, and titled "An Ordinance of the City of Gastonia Declaring Commercial Exploitation of Obscene Material and Performances and the Indecent Rendition of Services to Be a Public Nuisance and Providing for Their Abatement in Civil and Criminal Proceedings." Plaintiff, the owner and operator of an adult book store in Gastonia, seeks declaratory relief and an injunction against enforcement of portions of the ordinance.

On May 9, 1978, the parties filed a stipulation of facts and withdrew all preliminary motions. With consent a non-evidentiary hearing on the merits was held on June 20, 1978. The court now files this memorandum of decision setting out its findings of fact and conclusions of law.

## I.

Although the parties have consented to the court's jurisdiction, the court independently finds, as required, that jurisdiction over plaintiff's First Amendment claim exists under 28 U.S.C. § 1343 and that declaratory relief is authorized under 28 U.S.C. § 2201. The court further finds from the affidavits and stipulation of facts presented at the hearing that there is a genuine threat that defendants will enforce the ordinance against plaintiff unless they are

restrained and that plaintiff has standing to maintain this action. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 930–31, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).

## II.

The Gastonia ordinance prohibits only the commercial exploitation of obscenity. Provided the ordinance's substantive provisions are sufficiently sensitive to First Amendment concerns, there is nothing unconstitutional, in theory, in such an exercise of the police power. *Kingsley Books, Inc. v. Brown*, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957); *Fehlhaber v. North Carolina*, 445 F.Supp. 130 (E.D.N.C.1978). The definition of "obscene material" and "obscene performance" in Section 2(D) of the ordinance faithfully adheres to the guidelines set down in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), and the ordinance therefore treats only sexually explicit material which is outside the protection of the First Amendment.

■ Plaintiff bases its attack on the substantive provisions of the ordinance not on the First Amendment but on the Equal Protection Clause of the Fourteenth Amendment. Because the ordinance on its face attempts to deal with speech and conduct not within the protection of the First Amendment, the proper standard for review of plaintiff's claims is thus the so-called "rational relationship" test. Plaintiff specifically challenges a series of exceptions to the ordinance's prohibitions, which exceptions are set out in Section 3(B) of the ordinance.

A preliminary question of construction must be answered. Section 3 is titled "Prohibited Conduct Pertaining to Obscenity." In Section 3(A) are listed the various prohibitions—commercial exploitation, possession of obscene material with intent to commercially exploit, and promotion of either of the other two violations. Section 3(B) provides a series of "affirmative defenses" to any prosecution under the ordinance. The exceptions in Section 3(B) appear to be defenses on the issue of "commercial exploitation" and not on the issue of "obscenity." This construction is suggested by the general title of the section and by the juxtaposition of Sections 3(A) and 3(B)—the first setting out the prohibitions on commercial exploitation and the second defining certain defenses. Furthermore, each of the defenses in Section 3(B) relates to the *manner* of use, exhibition, presentation or dissemination and not to the *content* of the performance or material itself. Under the construction adopted here a defendant who successfully invokes one or more of the exceptions in Section 3(B) will escape punishment, not because his material or performance was not obscene but because he was not commercially exploiting it.

■ Plaintiff first contends that the exception in 3(B)(1) for "bona fide scientific, medical, educational, governmental or judicial" uses of obscenity is unconstitutionally vague. The court disagrees. The current definition of obscenity itself requires an assessment of a work's literary, artistic, political or scientific value taken as a whole. The inquiry under Section 3(B)(1) is substantially the same and is sufficiently specific to pass constitutional muster.

■ Plaintiff's second objection to Section 3(B)(1) is more persuasive. The exception for *bona fide* uses of the enumerated sorts is available only to the classes of persons listed—licensed physicians, licensed psychologists, licensed teachers, licensed clergymen, licensed attorneys, prosecutors or judges. This privileged use of obscenity by licensed professionals has no relation whatever to the basic goal of the ordinance; there is nothing more "commercially exploitative" in the use of obscenity for a *bona fide* educational purpose by a non-certified teacher than there is in the same use for the same purpose by a certified teacher. Because the exception in Section 3(B)(1) depends not simply on non-commercial purpose and use but also on the profession or occupation of the person involved in the use or dissemination, the ordinance is *pro tanto* inconsistent with the Equal Protection Clause.

■ The exception in Section 3(B)(2) covers the exhibition of collections of (constitutionally unprotected) art which are not for sale at the time of their exhibition. When this exception is read in conjunction with Section 2(A)(3), which defines "commercial exploitation" to include the exhibition of obscene material in exchange for an admission fee, the exception will apply only to free exhibitions of obscene art objects which are not for sale. There is nothing unconstitutional about excepting a class of activities which do not constitute commercial exploitation.

■ Section 3(B)(3) exempts the showing of collections of (constitutionally unprotected) art which may be for sale to the public so long as the minimum price for any item in the collection exceeds $100. This exception is plainly unconstitutional. There is nothing which makes a sale for $99 commercially exploitative while the same sale marked up to $101 is not commercially exploitative. Furthermore, the language of Section 3(B)(3) would make it an offense to sell an item for $1,000 if *any other item* in the collection was for sale at less then $100. This exception for high-priced pornography is so curious it raises some doubt about whether Section 3(B)(3) was intended to relate to the issue of commercial exploitation at all. However, even if it is construed as relevant to the question of obscenity *vel non*, the exception cannot stand. The literary or artistic value of a book or object, and therefore the constitutional protection afforded by the first amendment, does not depend on its current local price.

## III.

Plaintiff's second attack on the ordinance concerns its procedural provisions. The ordinance provides for criminal prosecutions, civil penalties, and abatement orders and injunctions. These are governed by Sections 7, 8 and 5 and 9 respectively.

■ The procedure for criminal prosecutions under the ordinance appears unobjectionable, except for the treatment of the "affirmative defenses" listed in Section 3(B). It is not clear from the language of Section 3(B) whether a defendant who invokes one of the listed affirmative defenses must carry the burden of establishing the defense. What is clear from the ordinance as a whole is that the affirmative defenses in Section 3(B) are not merely matters in mitigation of the offense but are instead defenses which negate an essential element of the offense—commercial exploitation. *Cf. Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). In accord with the saving clause in Section 10 of the ordinance, the court will construe Section 3(B) as placing the burden of proof on the city in any criminal prosecution under the ordinance in which the defendant comes forward with evidence of a defense under Section 3(B). So construed, there appear to be no constitutional problems with the procedures for invoking the various affirmative defenses. *See generally, Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

■ Section 5 of the ordinance makes each violation a public nuisance. Under N.C.G.S. § 160A–175(e) a procedure for abating public nuisances already exists, and this procedure is applicable to any municipal ordinance which "makes unlawful a condition existing upon or use made of real property." An abatement order under the statute may include a direction that any building in which prohibited activity takes place be closed or that any "movable property" on the premises where an unlawful use occurs be taken.

Plaintiff contends that this procedure authorizes the closing of a book store, theater or other establishment whenever it is determined that any single item sold or exhibited or any single performance is obscene and has been commercially exploited. The effect of such an order would be to bar the future distribution of books, exhibition of films or production of plays without regard to their content, without any adjudication of obscenity and on the basis of a single prohibited book, film or play. Clearly, if § 160A–175(e) applies in the manner suggested, the ordinance thereby permits un-

constitutional prior restraints. *Cf. Fehlhaber v. North Carolina*, 445 F.Supp. at 137.

The abatement procedure is available "subject to the express terms of the ordinance." N.C.G.S. § 160A–175(f). The Gastonia ordinance does not expressly exclude the procedure set out in § 160A–175(e). It does establish a procedure in Section 9 for injunctive relief against the future commercial exploitation of material determined to be obscene after an adversary judicial hearing, and it is possible that Section 9 was intended to be the exclusive means of enjoining or abating nuisances defined under the ordinance. Whether the ordinance is construed so as to substitute the procedure in Section 9 for that set out in § 160A–175(e) or whether it is held to incorporate the procedure in § 160A–175(e) in addition to that in Section 9, the result is the same: the procedure for abatement orders in § 160A–175(e) is constitutionally defective and may not be used in enforcing the substantive provisions of the ordinance.

Plaintiff does not attack the procedure set out in Section 9, and the court expresses no view on its constitutionality.

█ Section 8 of the ordinance provides for civil penalties of up to $500 for each violation. (In comparison, a criminal violation of the ordinance carries a maximum fine of $50 or thirty days' imprisonment.) Whenever he determines that the ordinance has been violated, the City Manager is authorized to issue a citation to the violator, describing the alleged violation and assessing a penalty. The citation also carries notice that if the penalty is not paid within five days the City Manager will instruct the City Attorney to commence a suit under N.C.G.S. § 160A–175(c) to collect the penalty. Actions under the statute are in the nature of suits to collect a debt.

The evil of the citation procedure is obvious. It permits an informal system of prior restraint operated entirely by a political official. The provisions in Section 8 of the ordinance are strikingly similar to a Rhode Island scheme found unacceptable in *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). Under the statute struck down in *Bantam* the Rhode Island Commission to Encourage Morality in Youth was authorized to issue lists of what it considered objectionable books and publications. These lists were circulated to booksellers (and police departments) with a request for "cooperation" from the book store owners. The lists and notices generally included a "reminder" that if booksellers did not cooperate in restricting distribution of the listed publications, the Commission would recommend prosecution by the Attorney General. The reaction of the plaintiff booksellers to the Rhode Island scheme was to stop any further circulation of publications listed by the Commission, remove the books from store shelves, and refuse to reorder new shipments. All this occurred without any determination that the publications listed were obscene according to the accepted constitutional tests. The Supreme Court's rejection of the Rhode Island plan was unequivocal:

> "What Rhode Island has done, in fact, has been to subject the distribution of publications to a system of prior administrative restraints, since the Commission is not a judicial body and its decisions to list particular publications as objectionable do not follow judicial determinations that such publications may lawfully be banned. Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity. [citations omitted] We have tolerated such a system only where it operated under judicial superintendence and assured an almost immediate judicial determination of the validity of the restraint. [citation omitted] The system at bar includes no such saving features. On the contrary, its capacity for suppression of constitutionally protected publications is far in excess of that of the typical licensing scheme held constitutionally invalid by this Court."

372 U.S. at 70–71, 83 S.Ct. at 639. *Cf. Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975).

The Gastonia ordinance holds the same potential for harassment and informal censorship. It creates a strong pressure on book stores to pay the so-called "penalty" and forego the expense and risk of a court test of the City Manager's personal judgment of what is obscene. The city contends that the citation is nothing more than a "notice of intent to sue." It is far more than this; it is the assessment of a penalty no different in effect than a criminal fine. The citation procedure short-circuits all the protections available in a criminal prosecution. Indeed, there is no reason under the ordinance why the city should choose to institute a criminal proceeding to collect a $50 fine when it can use the simple citation procedure and collect a $500 penalty without even going to court. It is clear that the informal control provided by the citation system was intended to be the principal means of enforcing the ordinance.

A second aspect of Section 8 requires comment. Under Section 8(D) the City Manager "shall instruct" the City Attorney to institute suit if the assessed penalty is not paid. This language is not wholly free from ambiguity, but its most natural meaning is that the City Attorney lacks discretion to refuse to institute suit once he has been "instructed" to do so by the City Manager. If the ordinance is otherwise construed so that the City Attorney retains discretion not to institute suit, it is defective. The potential for abuse noted in *Bantam Books* can only be avoided if a citation is followed by an immediate and *mandatory* judicial determination of obscenity. This would be so *even if* the ordinance were amended to prevent the city from collecting a penalty without first going to court. As the Supreme Court held in *Bantam Books* the mere issuance of a citation or list may amount to impermissible censorship.

## IV.

Plaintiff has also raised what purports to be a pendent claim based on N.C. G.S. § 160A-174(b). See also *State v. Tenore,* 280 N.C. 238, 185 S.E.2d 644 (1972). The assertion is that the Gastonia ordinance is preempted under North Carolina law by virtue of the statewide standards and procedures regulating obscenity set out in N.C. G.S. § 14-190.1 *et seq.* and in Senate Bill 539 (1977 Session Laws, ch. 819—"An Act to Provide for the Civil Abatement of Nuisances Including Obscene Matter"). The "operative facts" regarding this claim are only tenuously related, if at all, to those involved in plaintiff's First Amendment attack. Indeed, the only common ground of the two claims is that they involve the same ordinance. Even assuming the existence of *power* to adjudicate plaintiff's pendent claim, however, the court is of the opinion that this is one of those rare cases where the court should, in the exercise of discretion, decline jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). As Justice Brennan remarked in *Gibbs*:

> "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."

383 U.S. at 726, 86 S.Ct. at 1139. There is no federal interest in the decision of what is exclusively a question of state law, especially one which does not impinge on the federal issues in the case. Plaintiff's second claim will therefore be dismissed for want of subject matter jurisdiction. *Accord, Brown v. Brannon,* 399 F.Supp. 133 (M.D.N.C.1975), *aff'd. mem.* 535 F.2d 1249 (4th Cir. 1976).

## V.

The final question arises under Section 10 of the ordinance. The severability provision in Section 10 requires that the court first attempt to construe the ordinance so as to hold it lawful and constitutional. That admonition has been followed throughout this opinion. However, the ordinance further states:

> "If the Court cannot so construe or interpret said portion, it shall strike or modify only the portions necessary to render this Ordinance lawful and constitutional, unless the result is to render the remainder

of this Ordinance meaningless, unlawful, or unconstitutional."

The court has no difficulty excising the offending portions of the ordinance relating to procedure for enforcement. Consistent with the reasoning in part III of the opinion, the ordinance may be saved by striking Section 8, pertaining to civil penalties, and by making unavailable the general abatement procedure in N.C.G.S. § 160A–175(e). Each of these provisions is severable without doing violence to other provisions or without interfering with the general intent of the ordinance; they are merely alternative means for enforcing the ordinance's substantive prohibitions.

The situation is otherwise with regard to the ordinance's substantive defects, and in particular the unconstitutionality of the exceptions in Sections 3(B)(1) and 3(B)(3). Clearly, an order striking the exception in Section 3(B)(3) would have the effect of expanding the scope of the ordinance to reach a class of activities the city did not mean to touch when it adopted the ordinance. Likewise, striking out the offensive limitation in Section 3(B)(1) would *restrict* the substantive scope of the statute. In both cases the provisions cannot be severed without changing the basic prohibitions of the ordinance.

 It is a cardinal rule of construction that where an excepting clause or restriction is found unconstitutional the substantive provisions it qualifies cannot stand. *Davis v. Wallace,* 257 U.S. 478, 42 S.Ct. 164, 66 L.Ed. 325 (1922); *Frost v. Corporation Commission of Oklahoma,* 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483 (1929); *McCorkle v. United States,* 559 F.2d 1258 (4th Cir. 1977); *Quinn v. Commissioner of Internal Revenue,* 524 F.2d 617 (7th Cir. 1975); *see generally,* 82 C.J.S. *Statutes* § 93c. The court will not assume that the legislative body would have enacted the ordinance without the exceptions, nor can the court determine how the substantive provisions of the ordinance might otherwise have been modified had it been known the exceptions would be found unconstitutional. The general words of severability in Section 10 are not sufficiently specific to permit any inference on either score. Insofar as the broad terms of Section 10 could be read as an invitation to the court to rewrite the substantive provisions of the ordinance, the court declines to perform a function properly left to the city.

Because the unconstitutional provisions in Section 3(B) cannot be removed without altering the basic prohibitions of the ordinance, the ordinance can only be voided *in toto.*

In accord with the foregoing findings and conclusions, plaintiff is directed to tender an appropriate judgment.

## APPENDIX

AN ORDINANCE OF THE CITY OF GASTONIA DECLARING COMMERCIAL EXPLOITATION OF OBSCENE MATERIAL AND PERFORMANCES AND THE INDECENT RENDITION OF SERVICES TO BE A PUBLIC NUISANCE AND PROVIDING FOR THEIR ABATEMENT IN CIVIL AND CRIMINAL PROCEEDINGS

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF GASTONIA:

Section 1: Effective Date

A. This Ordinance shall become effective August 16, 1977, at 12:01 A.M.

Section 2: Definitions

A. "Commercial exploitation" of obscenity means participating in the production of an obscene performance or dealing in obscene material for the purpose of receiving economic benefit in the present or future, and includes:

1. participating in the production of an obscene performance or dealing in obscene material pursuant to a contract of employment or similar economic arrangement; or

2. selling, renting, or participating in any transaction in which any valuable consideration is received for transferring the use or possession of obscene material; or

3. engaging in or promoting any exhibition, performance or other transaction in

which any valuable consideration is received for permitting the viewing or hearing of obscene material or an obscene performance; or

4. distributing obscene material or participating in an obscene performance, whether for consideration or not, for the purpose of advertising or for the purpose of entertaining the patrons of a commercial establishment.

B. *"Knowingly"* means with the knowledge of the content, nature, and character of the material or performance, but does not mean knowledge that any material or performance is obscene.

C. "Material" means any:

1. book, magazine, newspaper, pamphlet, handbill, or similar printed or written matter; or

2. drawing, picture, illustration, transparency, photograph, motion picture, film negative, film positive, or similar representation of reproduction; or

3. phonograph record, sound tape, sound track, visual tape, audio-visual tape, or similar recording or reproduction

D. "Obscene material" and "obscene performance" mean any material or performance which:

1. the average person, applying community standards, would find when considered as a whole, appeals to prurient interest; and

2. depicts or describes sexual conduct by patently offensive representations or descriptions of: a) ultimate sexual acts, normal or perverted, actual or simulated; or b) masturbation, excretory functions, lewd exhibition of the genitals or genital region, or lewd exhibition of the anus or the anal region; and

3. when considered as a whole, and in the context in which it was used, lacks serious literary, artistic, political or scientific value.

E. "Performance" means any preview, play, show, skit, dance, film or other exibition projected or performed before an audience.

F. "Person" means any individual, partnership, firm, association, corporation or other legal entity.

G. "Promote" means to assist, cause, counsel, direct, permit, procure, or produce.

H. "Public view" means the view of any patron of a commercial establishment, paying or not, regardless of the sex of the viewer.

Section 3: Prohibited Conduct Pertaining To Obscenity

A. It is a violation of this Ordinance if any person knowingly:

1. commercially exploits obscene material or an obscene performance; or

2. possesses obscene material with an intent to commercially exploit it; or

3. promotes the commission of any violation of this section.

*Each sale or other transaction involving the commercial exploitation of obscene material and the holding of each obscene performance constitutes a separate violation of this Ordinance, but possession of multiple copies of a particular item of obscene material with an intent to commercially exploit the item constitutes only one violation, and each day of possession of an item of obscene material with an intent to commercially exploit the item does not constitute a separate violation.*

B. It shall be an affirmative defence in any prosecution under this ordinance that the allegedly obscene material was disseminated or presented:

1. For a bona fide scientific, medical, educational, governmental, or judicial purpose by:

(a) a duly licensed physician

(b) a duly licensed psychologist

(c) a teacher holding a valid North Carolina teaching certificate

(d) a clergyman licensed in North Carolina to perform marriages

(e) a lawyer licensed in North Carolina

(f) a prosecutor working for the State of North Carolina or any political subdivision thereof

(g) a judge of any Court of Record in North Carolina or any political subdivision thereof

2. As a part of a collection of works of art which are not for sale to the general public at the time of the exhibition of the art.

3. As a part of a collection of works of art, the minimum price for any of the items for sale being in excess of one hundred ($100.00) dollars.

## Section 4: Prohibited Conduct Pertaining To The Indecent Rendition Of Services

A. It is a violation of this Ordinance, if any person owning, operating, or being employed by a commercial establishment at which intoxicating beverages are sold or consumed on the premises by patrons for a fee, knowingly:

1. renders a service incident to the business of the establishment in such a manner as to expose to public view: a) the genitals, pubic hair, the buttocks, the perineum, the anal region, or the pubic hair region; or b) any device, costume, or covering which simulates or has the appearance of genitals, pubic hair, buttocks, the perineum, the anal region, or the pubic hair region; or c) any portion of the female breast at or below the areola thereof; or

2. promotes the commission of any violation of this section.

## Section 5: Declaration Of Nuisance

A. Each violation of this Ordinance constitutes a public nuisance. Each item of obscene material commercially exploited or possessed with an intent to commercially exploit it is a public nuisance.

## Section 6: Cumulative Penalties

A. The civil and criminal penalties provided under this Ordinance are cumulative, and not exclusive, and may be independently pursued against the same person for the same activity constituting a violation of this Ordinance.

## Section 7: Criminal Prosecution

A. The criminal penalty for each violation of this Ordinance shall be a fine of not more than fifty dollars ($50.00) or imprisonment for not more than thirty days.

B. The Chief of Police or the City Manager may seek from an appropriate official of the General Court of Justice an arrest warrant or other process initiating criminal charges against any person who violates this Ordinance. No other agent or employee of the City may, in his official capacity, seek an arrest warrant or other criminal process for a violation of this Ordinance without the prior written approval of the Chief of Police or the City Manager.

## Section 8: Civil Penalties

A. Any person who violates this Ordinance is subject to a civil penalty of five hundred ($500.00) dollars for each violation.

B. Upon learning that a person has violated this Ordinance the City Manager may cite that person for the violation(s). The citation must be in writing and the writing must include:

1. the name and address of the person cited; and

2. the date of the citation; and

3. for each violation, a description of the activities which violated this Ordinance; and

4. a statement that if the penalty is not paid within five working days after the date of service of the citation the City Attorney will be instructed to commence a civil action to collect the penalty.

A copy of this Ordinance shall be attached to or included in the citation.

C. The citation may be served on the person cited in any manner which, under Section 1A–1, Rule 4, of the General Statutes of North Carolina, would be proper for serving a civil complaint except for service by publication.

D. If the person cited by the City Manager under this Ordinance fails to pay the civil penalty within five working days after the date of service of the citation then, pursuant to Section 160A–175(c) of the

General Statutes of North Carolina, the City Manager shall instruct the City Attorney to commence a civil action in the General Court of Justice to recover the civil penalty provided under this Ordinance.

E. Contemporaneously with or after the issuance of a citation by the City Manager, the City Attorney may apply to the General Court of Justice for a protective order to insure in the event the civil penalty is not paid within the specified time the integrity and subsequent production for evidentiary purposes of a copy of any allegedly obscene material or of other evidence of a violation of this Ordinance.

Section 9: Confiscation Of Obscene Materials And Injunctive Relief

A. Whenever the City Attorney has reason to believe there is any obscene material within the City which is a public nuisance under this Ordinance and a civil or criminal proceeding has been commenced or a citation has been issued by the City Manager with respect to it, the City Attorney is directed to take all appropriate steps to secure the issuance of a Court Order for confiscation and destruction of the obscene material at the appropriate time if it is judicially determined to be obscene following an adversary hearing at which the violator of this Ordinance was heard or had an opportunity to be heard. These steps may include cooperation with the prosecution in a criminal proceeding, making any pertinent motions in any civil action commenced on behalf of the City, intervening as amicus curiae in any civil or criminal proceeding, or commencement of an independent civil action. The City Attorney is also directed to simultaneously take all appropriate steps to secure the issuance of any appropriate injunctive relief against the violator of this Ordinance, including a prohibition of commercial exploitation of copies of the obscene material in the future, if it is judicially determined to be obscene following an adversary hearing at which the violator of this Ordinance was heard or had an opportunity to be heard.

Section 10: Severability Clause

A. If any Court shall determine that any portion of this Ordinance is unconstitutional or unlawful as worded, the Court shall first attempt to construe or interpret the portion so as to render if lawful and constitutional. If the Court cannot so construe or interpret said portion, it shall strike or modify only the portions necessary to render this Ordinance lawful and constitutional, unless the result is to render the remainder of this Ordinance meaningless, unlawful, or unconstitutional.

PASSED AND ADOPTED this the 16th day of August, 1977.

_____
Mayor

ATTEST:

_____
City Clerk