**Louis, Ned E. and Basil A. TORTI, doing business as Wisconsin De Luxe Company, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 12024.

United State Court of Appeals Seventh Circuit.

Nov. 27, 1957.

Charles K. Rice, Asst. Atty. Gen., Sheldon I. Fink, Atty., Tax Division, Dept. of Justice, Washington, D. C., Edward G. Minor, U. S. Atty., Milwaukee, Wis., Ellis N. Slack, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., for appellant.

Maurice Weinstein, Milwaukee, Wis., for appellee.

Before DUFFY, Chief Judge, and SCHNACKENBERG and PARKINSON, Circuit Judges.

DUFFY, Chief Judge.

This is a suit for a refund of excise taxes paid by taxpayers upon sales of luggage, watches and jewelry. The Government claims that such sales were at retail and therefore taxable. The District Court held that the sales in question were not at retail and hence were nontaxable.

Taxpayers' place of business is Milwaukee, Wisconsin; its principal business is selling numerous kinds of merchandise, novelties and premium goods to operators of coin machines, pin games and amusement and vending machines. They also sell their merchandise to organizations, churches and clubs. Sales were made at taxpayers' business location and also were made by means of mail order catalogs. In plaintiffs' catalogs appeared the following: "We sell wholesale only and for that reason try to keep our catalog in proper and deserving channels at all times." There also was a considerable amount of testimony that sales by taxpayers to the classifications hereinafter described were made at the wholesale level. The quantities sold at any one time depended on the merchandise involved. Some were sold in individual units, but usually sales were by the dozen, gross, hundreds or thousands.

Taxpayers' customers who were located throughout the United States fell into three general classifications: 1) Operators of carnivals, parks and concessions; 2) Operators of pin games and coin machines; 3) Churches, organizations and clubs. Under 1) are persons or business concerns that operate at county and state fairs, carnivals, and amusement parks. The merchandise purchased by them from taxpayers is used as prizes in connection with various games and tests of skill. 2) Operators of pin games and coin machines usually place such machines in airports, restaurants and taverns for amusement purposes and the merchandise purchased from taxpayers is used by said operators as prizes. 3) Churches, organizations, and clubs use such merchandise as prizes for bazaars, card parties, and other gatherings and also as door prizes usually for the purpose of stimulating attendance at affairs sponsored by such organizations.

Sections 1651 and 2400 of the Internal Revenue Code of 1939, 26 U.S.C.A. §§ 1651, 2400, provide for the imposition of an excise tax upon the sale at retail of leather goods and jewelry. The District Court held that the sales in question were not retail sales.

With commendable frankness, Counsel for the United States says: "We are mindful of the fact that there is no explicit definition of 'sold at retail' in the excise tax statutes or in the legislative history thereof and that the Treasury Regulations do not explicitly set forth a definition of that term." The Government insists, however, that a retail sale is any sale not for the purpose of resale, and argues that as the merchandise purchased from taxpayers was not for the purpose of resale, the tax under the statutory provisions heretofore quoted was properly assessed.

The only case directly in point is Gellman v. United States, 8 Cir., 1956, 235 F.2d 87. The District Court pointed out that the facts in Gellman were substantially the same as in the case at bar, and followed the decision of that court.

The question decided in Gellman was "What constitutes a sale at retail within the meaning of §§ 1651 and 2400 of the Internal Revenue Code of 1939, as amended, 26 U.S.C.A. §§ 1651, 2400?" The merchandise there, as here, was a variety of premium and novelty merchandise sold largely to lodges, churches, clubs, taverns and concessionnaires. The merchandise was used by the purchasers for prizes. The taxpayer circulated catalogs and a majority of sales arose from orders from the catalogs, although sales also resulted from direct solicitation and purchases at taxpayer's place of business. The Government contended there, as here, that the sale of merchandise consisting of jewelry and leather goods was at retail, and that an excise tax was due thereon.

In Gellman, the Court of Appeals for the Eighth Circuit rejected the contention which the Government again insists upon in the instant case. In Gellman, the Court quoted from Roland Electrical Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383, where the Court was considering whether an electrical engineering company was exempt from the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., as a retail service establishment and held that it was not. In Roland, the Supreme Court made a detailed analysis of the word "retail." It contrasted "retail" with "wholesale" and quoted definitions from many sources, and showed the distinction which had been made between "wholesale" and "retail" by such governmental agencies as the Bureau of the Census, the Bureau of the Budget, the Social Security Board, and the Wage and Hour Division of the Department of Labor.

In Gellman, the Court said, 235 F.2d at pages 92, 93: "Even if we assume, as the Government urges, that Congress in shifting from a manufacturers' tax to a retail tax did not intend to overlook imposing a tax somewhere along the line, what has heretofore been said illustrates that Congress has not stated with certainty just what it considers to be the retail level * * *. It was also in Congress's power to make all sales not for resale taxable. However, our present problem is to interpret the Act passed, not to determine what type of an Act could have been passed."

█ In Gellman, the Court further stated, at page 93: "The Supreme Court in the Roland Co. case, supra, has given 'retail' a definite meaning. The definition ascribed to 'retail' by the trial court does not fall within such meaning. Where words are susceptible of several meanings, the court is at liberty to determine from the legislative history and surrounding circumstances the sense in which the words were used in the statute. However, where, as here, the interpretation urged by the Government is not supported by common usage, dictionary definition, or court decision, such interpretation cannot be upheld."

We find ourselves in agreement with the decision in Gellman v. United States, 8 Cir., 235 F.2d 87. We approve the statements contained in that opinion which we have hereinbefore quoted.

█ It is, of course, a fundamental and widely accepted rule that where a statute uses a word or term and does not define same, the courts must give such word or term its ordinary, plain and commonly accepted meaning. In Walling v. Consumers Co., 7 Cir., 149 F.2d 626, at page 630 we said: "It is true, the Act does not define 'retail establishment' but it is phrased in ordinary, non-technical language for general application; and when Congress gives no clue to its intentions except familiar English words and no hint by the draftsmen of the words that they meant to use them in any but an ordinary sense, the words must be given their plain, ordinary and commonly understood meaning. Addison v. Holly Hill Fruit Products, 322 U.S. 607, 618, 64 S.Ct. 1215, 88 L.Ed. 1488 * *."

**626**

■ Retail is a common word. A sale at retail usually encompasses a sale in small quantity for personal use or consumption. Wherever courts have been required to define "retail" or "sale at retail" in the absence of a statutory definition, they have adopted the ordinary common meaning. Citing Webster's New International Dictionary, we said, in Walling v. Consumers Co., 7 Cir., 149 F.2d 626, at page 630 "We know that retail sales are sales in individual quantities for personal or household consumption." In the same case, citing White Motor Co. v. Littleton, 5 Cir., 124 F.2d 92, we said: " * * * and that a retail sale means a sale in small quantity or direct to the consumer." The opinion in the White case stated, at page 93: "The word retail is not defined by the Act. Given its common and ordinary acceptation when used in sales parlance, it means a sale in small quantity or direct to the consumer, as distinguished from the word wholesale, meaning a sale in large quantity to one who intends to re-sell."

■ The customers of taxpayers did not purchase the merchandise for their personal wants or for family use. They made their purchases for business reasons. They had a profit motive.

There was ample evidence in this record to support the finding of the District Court that the taxpayers conduct a business at wholesale, and sell their merchandise at wholesale price levels and in wholesale quantities.

We agree with the District Court's conclusion of law that the sales in question were not sales at retail and were not properly subject to the retail excise tax imposed by sections 1651 and 2400 of the Internal Revenue Code of 1939.

■ The Government raises an additional point claiming the taxpayers should have complied with Treasury Regulation 51, Section 320.23 requiring exemption certificates. This same contention was rejected by the court in Gellman. The Regulation reads, in part: "All sales of taxable articles by persons engaged in the business of selling such articles at retail * * *." We think, as did the Court in Gellman, that the Regulation does not apply to taxpayers whose business the District Court found to be primarily wholesale.

Judgment affirmed.