**Martha MILLS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 82 C 1057.

United States District Court, N. D. Illinois, E. D.

Sept. 10, 1982.

Thomas Decker, Mary Katharine Ryan, Sharon Baldwin, Chicago, Ill., for plaintiff.

Dan K. Webb, U. S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

FLAUM, District Judge:

This matter comes before the court on a motion for summary judgment by defendant United States of America (the "Government") and a cross motion for summary judgment by plaintiff Martha A. Mills ("Mills") made pursuant to Federal Rule of Civil Procedure 56(c). For the reasons set forth below, the Government's motion for summary judgment on the complaint is granted and Mills' cross motion is denied.

The pertinent facts of this case are as follows:

The Criminal Justice Act of 1964 (the "Criminal Justice Act"), 18 U.S.C. § 3006A (1976), provides that an attorney appointed pursuant to its provisions, or the organization supplying the attorney so appointed, shall "be compensated at a rate not exceeding $30 per hour for time expended in court or before a United States magistrate and $20 per hour for time reasonably expended out of court, or such other hourly rate, fixed by the Judicial Council of the Circuit, not to exceed the minimum hourly scale established by a bar association for similar services rendered in the district." 18 U.S.C. § 3006A(d)(1) (1976). On December 18, 1981, the Judicial Council of the United States Court of Appeals for the Seventh Circuit (the "Judicial Council"), acting on a recommendation by the Bar Association of the Seventh Federal Circuit (the "Seventh Circuit Bar Association"), increased the maximum fees to $55 per hour for time spent in court or before a magistrate and $45 per hour for out-of-court time.

Mills, an attorney engaged in the private practice of law, is a panel attorney in the Federal Defender Program for the Northern District of Illinois who accepts court appointments under the Criminal Justice Act. In that capacity, on January 8, 1982, Mills was appointed to represent Stanley Dobbs ("Dobbs"), a defendant in a criminal case pending in the United States District Court for the Northern District of Illinois. She subsequently submitted a request for the sum of $127.50 for time spent representing Dobbs which was computed on the basis of the hourly rates set by the Judicial Council on December 18, 1981. The United States magistrate before whom Mills appeared approved this request, and it was submitted to the Administrative Office of the United States Courts (the "Administrative Office") for processing and payment.

The Administrative Office, claiming that the Judicial Council lacked the authority to raise the hourly rates to $55 and $45, respectively, refused to pay the full amount of $127.50. In a letter to Mills dated February 18, 1982, R. E. Moreland, Chief of the Audit Branch, Financial Management Division, of the Administrative Office, stated "It is the position of this office that we do not have the authority to reimburse attorneys for services provided defendants proceeding under the Criminal Justice Act in excess of those maximum hourly rates prescribed by the Act. We are bound by the

statutory maximum of $30 per hour for in-court service and $20 per hour for out-of-court service as specified in 18 U.S.C. § 3006A(d)(1)."

On February 22, 1982, Mills filed suit in the United States District Court for the Northern District of Illinois, Eastern Division, alleging the jurisdiction of the district court pursuant to 28 U.S.C. § 1346(a)(2) (1976 & Supp. II 1978). In her complaint Mills asks the court to order the Government to pay her the sum of $127.50 as the compensation due for services rendered in representing Dobbs and award her the cost of this action, including reasonable attorney's fees pursuant to 28 U.S.C. § 2412 (1976 & Supp. IV 1980).

Mills bases her position on the premise that the "not to exceed" language of the Criminal Justice Act does not make existence of a bar association minimum fee schedule a condition precedent to a rate adjustment. She sets forth three reasons as to why she reaches this conclusion: (i) that the language of the statute does not require that a bar association minimum exist; (ii) that Congress knew how to draft mandatory language; and (iii) that nothing in the statute requires a local bar association to exist in every court district or, if it does exist, to have a minimum fee. She also cites several principles of statutory construction and the legislative history of the Criminal Justice Act to support her position. In addition, Mills contends that even if existence of a bar association fee schedule were a condition precedent, the Judicial Council, in acting upon the recommendation of the Seventh Circuit Bar Association, satisfied this requirement.

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* Since no dispute as to a material fact is being raised by the parties, and the court finds none, it is appropriate to decide this case as a matter of law. *See Illinois Migrant Council v. Campbell Soup Co.,* 438 F.Supp. 222, 225 (N.D.Ill. 1977), *rev'd on other grounds,* 574 F.2d 374 (7th Cir. 1978).

The basic issues presented in this case are: (i) whether the existence of a bar association fee schedule is a condition precedent to a judicial council raising the hourly compensation to attorneys representing defendants pursuant to the Criminal Justice Act and (ii) if existence of such a fee schedule is a condition precedent, how this requirement is affected by the United States Supreme Court decision of *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), in which a bar association minimum fee schedule was held to be within the reach of the Sherman Act, 15 U.S.C. § 1 (1976).

As Mills accurately points out in "Plaintiff's Memorandum in Support of Her Motion for Summary Judgment", the starting point in construing a statute is the statute itself. *See Greyhound Corp. v. Mt. Hood Stages, Inc.,* 437 U.S. 322, 330, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239 (1978); *Chicago Transit Authority v. Adams,* 607 F.2d 1284, 1289 (7th Cir. 1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1979). However, her contention that it is clear from the language of the Criminal Justice Act that a bar association fee schedule need not exist in order for a judicial council to raise attorney's fees is not accepted. Indeed, the more persuasive argument is that this language contemplates that a fee schedule will exist. Accordingly, to determine how the statute should be construed, it is helpful to consider the legislative history of the Act and general rules of statutory interpretation.

The Criminal Justice Act, passed by Congress in 1964, originally provided that the hourly fee for representing a defendant could not exceed $15 for time in court or before a U. S. commissioner and $10 for out-of-court time. *See* Criminal Justice Act of 1964, Pub.L.No.88–455, § 2, 78 Stat. 552 (1964). In 1970 an amendment (the "1970 Amendment") was enacted which included

the substitution of the fee provision in question in this case in place of the original provision. *See* Pub.L.No.91–447, § 1, 84 Stat. 916 (1970), *codified at* 18 U.S.C. § 3006A(d)(1) (1976).

The legislative history of the 1970 Amendment indicates that the revisions originally proposed by the Senate and submitted to the Committee on the Judiciary of the House of Representatives would have raised the hourly compensation for all attorney time to $30. *See* H.R.Rep.No.1546, 91st Cong., 2d Sess., *reprinted in* 1970 U.S. Code Cong. & Ad.News 3982. The House Judiciary Committee rejected this approach and reinserted the distinction between court and non-court time. It also added the provision that a judicial council could modify the hourly rate "not to exceed the minimum hourly scale established by a bar association for similar services rendered in the district." *Id.;* 18 U.S.C. § 3006A(d)(1) (1976).

The revised bill was managed in the House of Representatives by Representative Robert William Kastenmeier of Wisconsin, chairman of the House Subcommittee on the Courts, Civil Liberties and the Administration of Justice. In urging its passage, Representative Kastenmeier stated:

> Nothing in the legislation delegates the authority of Congress to determine rates of compensation to local bar associations. Rates of compensation and maximum amounts of compensation are to be fixed by the judicial councils within the maximums prescribed by Congress.... If in a particular case the judicial council feels that the hourly maximums are inadequate, it is nevertheless limited to [the] minimum rate, if any, set by a bar association.

116 Cong.Rec. 34811 (1970). He responded to the question of "Why do you set up $30 an hour, $20 an hour, and then turn around and say in the same breath that the Judicial Council can change it if it wants to" by stating:

> The other amendment [the provision giving the judicial councils authority to

raise the hourly rate] is an exceptional provision not to be generally used. It provides that the Judicial Council of the Circuit, where literally the Criminal Justice Act is unworkable [,] some sort of additional compensation, [sic] may fix a rate not more than the local bar association rate.

> That, as I said, is an exceptional provision, but we regard it as a sort of safety valve for some cases to avoid an inequity and a disservice to the act.

*Id.* at 34812. These comments indicate that Representative Kastenmeier believed that under the 1970 Amendment the discretion of a judicial council to raise fees was limited by a specific ceiling—the minimum bar association fee schedule—and that he presumed the existence of such a fee schedule.

The United States Supreme Court has stated that the explanation of a piece of legislation by one of its sponsors "deserves to be accorded substantial weight in interpreting the statute." *Federal Energy Administration v. Algonquin Sng. Inc.,* 426 U.S. 548, 564, 96 S.Ct. 2295, 2304, 49 L.Ed.2d 49 (1976). Although technically not a sponsor of the 1970 Amendment, in light of his role in managing the legislation in the House of Representatives, the fact that Representative Kastenmeier viewed the power of a judicial council as being limited must be given meaningful weight in interpreting the provision in question.

The Director of the Administrative Office, who is responsible for supervising payments made to attorneys under the Act,[1] has taken the position that the existence of a bar association fee schedule is a condition precedent to a judicial council increasing the hourly compensation. The approach taken by the Administrative Office is especially significant because the United States Supreme Court repeatedly has stated that when a question of statutory construction arises great deference should be given to how the statute is interpreted by the officers or agents charged with its administration. *See, e.g., Red Lion Broadcasting Co.*

---

1. *See* 18 U.S.C. § 3006A(j) (1976).

*v. F.C.C.*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969); *Zemel v. Rusk*, 381 U.S. 1, 11, 85 S.Ct. 1271 (1965); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Following this direction, in a recent case the United States Court of Appeals for the Seventh Circuit looked to whether a compelling justification existed in determining if the interpretation advanced by the official charged with administering a statute should be overruled and stated that "Absent compelling indications that this interpretation was wrong, the Secretary's construction of the statute should have been followed." *In re Chicago, Milwaukee, St. Paul & Pacific Co.*, 673 F.2d 169, 173 (7th Cir. 1982), *citing Red Lion Broadcasting Co. v. F.C.C.*, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969) ("The construction of a statute by those charged with its execution should be followed unless there are compelling reasons that it is wrong". *Id.* at 381, 89 S.Ct. at 1802). In his "Memorandum To All Chief Judges, U.S. Courts of Appeals," dated December 29, 1981, William E. Foley, the Director of the Administrative Office stated that "[a]s a result of my extensive involvement with the Criminal Justice Act since its inception, I am convinced that the Circuit Councils do not currently possess the authority to increase the hourly rates of compensation above the statutory maximum . . . ." Since this court has found no compelling indications that Foley's interpretation is wrong, due deference must be given to such an administrative determination.

■ Thus, based on the language of the Criminal Justice Act, its legislative history and the position taken by the Administrative Office, the court concludes that the

existence of a bar association fee schedule is a condition precedent to a judicial council being empowered to raise the hourly compensation to attorneys. Accordingly, the question of whether this condition precedent is affected by the United States Supreme Court decision of *Goldfarb v. Virginia State Bar,* in which the Court held that a bar association minimum fee schedule was within the reach of the Sherman Act, 15 U.S.C. § 1 (1976), must be considered since *Goldfarb* has resulted in the abolition of bar association fee schedules. *See* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572.

■ It is a well accepted principle of statutory construction that if the qualifying portion of a statute is held to be unconstitutional, such a holding should not serve to expand the scope of authority which the statute grants.[2] This principle was applied by the United States Court of Appeals for the Fourth Circuit in *McCorkle v. United States,* 559 F.2d 1258 (4th Cir. 1977), in deciding an issue analogous to the one before this court. In *McCorkle* the court considered language of a provision in the Federal Salary Act of 1967 (the "Federal Salary Act") which provided that salary recommendations by the President submitted to Congress will become effective "but only to the extent that" between the submittal and the effective date no other rate has been enacted into law and/or neither House of Congress has enacted legislation disapproving of the Presidential recommendations. *See* 2 U.S.C. § 359(1) (1976). The court concluded that if the provision which, in effect, enabled one House of Congress to veto a Presidential recommendation was unconstitutional, the President would not

---

**2.** *See, e.g., Davis v. Wallace*, 257 U.S. 478, 42 S.Ct. 164, 66 L.Ed. 325 (1922) ("Where an excepting provision in a statute is found unconstitutional, courts very generally hold that this does not work an enlargement of the scope or operation of other provisions with which that provision was enacted, and which it was intended to qualify or restrain." *Id.* at 484, 42 S.Ct. at 166); *Quinn v. Commissioner of Internal Revenue*, 524 F.2d 617 (7th Cir. 1975) ("when a section of a statute is declared void, the statute cannot be given effect as though the legislature had not enacted the conditions limit-

ing its operation." *Id.* at 626); *U. T. Incorporated v. Brown*, 457 F.Supp. 163 (W.D.N.C. 1978) ("It is a cardinal rule of construction that where an excepting clause or restriction is found unconstitutional the substantive provisions it qualifies cannot stand. The court will not assume that the legislative body would have enacted the ordinance without the exceptions, nor can the court determine how the substantive provisions of the ordinance might otherwise have been modified had it been known the exceptions would be found unconstitutional." *Id.* at 170 (citations omitted)).

have authority to establish salaries pursuant to the section of the Federal Salary Act in question. In explaining this conclusion, the court stated "When the questioned clause restricts a power granted by the legislature, the case against severance is strong. Otherwise, the scope of the power would be enlarged beyond the legislature's intent." 559 F.2d at 1261. The "not to exceed" language of the Criminal Justice Act being examined by this court is analogous to the "but only to the extent" language in question in *McCorkle.* Here, as in *McCorkle,* Congress placed a limit on a power granted and the invalidity of the standard imposed cannot serve to expand the scope of the power granted.

This court is sympathetic to efforts to raise the compensation paid to attorneys from private practice who accept appointments under the Federal Defender Program. The court recognizes that the report of the Committee on the Judiciary of the House of Representatives, which recommended passage of the 1970 Amendment, stated that one way the Amendment sought to accomplish its purpose of improving the Criminal Justice Act was to make the maximum compensation to appointed counsel "more realistic in terms of today's conditions." H.R.Rep.No.1546, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Ad.News 3983. Certainly fees which were realistic in 1970 are no longer appropriate in 1982. Unfortunately, however, the fact that the court is understanding of efforts to raise attorney's fees from the hourly rate which was deemed appropriate in 1970 cannot empower it to decide in Mills' favor.

For the above reasons, this court concludes that the Judicial Council lacked the authority to raise the hourly rates of compensation to be paid to attorneys pursu-

ant to the Criminal Justice Act. Under the present state of the legislation, Congress, not the courts, must act if the compensation paid is to be more than $30 per hour for in-court time or appearances before a magistrate and $20 per hour for out-of-court time. In this regard, a bill has been introduced in the House of Representatives which would give the Judicial Conference of the United States the specific authority to modify the maximum hourly rates of compensation for attorneys representing indigents under the Criminal Justice Act. *See* H.R. 5190, 98th Cong., 1st Sess. (1981), introduced in the House of Representatives on December 11, 1981.[3]

Accordingly, the Government's motion for summary judgment on the complaint is granted and Mills' motion is denied.

It is so ordered.

**3.** Specifically H.R. 5190 provides, in relevant part, "Any attorney appointed under this section or any bar association, legal aid agency, or community defender organization which has provided the appointed attorney shall, at the conclusion of the representation or any segment thereof, be compensated for time expended in court or before a United States magistrate and for time reasonably expended out of court at rates not to exceed those established by the Judicial Conference of the United States. The Judicial Conference may modify such maximum hourly rates from time to time as necessary and appropriate to provide for reasonable compensation to attorney's providing representation under this section." H.R. 5190, 98th Cong., 1st Sess. (1982).